**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| N.P., individually and on behalf of all others similarly situated, | Case No. 1:16-cv-8655 |
| *Plaintiff,* | |
| *v.* | |
| STANDARD INNOVATION (US), CORP., d/b/a WE-VIBE, a Delaware corporation, | |
| *Defendant.* | |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff N.P. ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Standard Innovation (US) Corp. ("Standard Innovation" or "Defendant") for selling products that secretly collect and transmit highly sensitive personally identifiable information about the consumers using them. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

1.      Defendant Standard Innovation is a "sensual lifestyle products" company that sells a high-end vibrator called the We-Vibe. To fully operate the We-Vibe, users download Defendant's "We-Connect" application from the Apple App Store or the Google Play store and install it on their smartphones. With We-Connect, users can "pair" their smartphone to the We-Vibe, allowing them—and their partners—remote control over the vibrator's customizable settings and features.

2.      Unbeknownst to its customers, however, Defendant designed We-Connect to (i)

1

collect and record highly intimate and sensitive data regarding consumers' personal We-Vibe use, including the date and time of each use and the selected vibration settings, and (ii) transmit such usage data—along with the user's personal email address—to its servers in Canada.

3.      Though the data collected from its customers' smartphones is undoubtedly valuable to the company, Defendant's conduct demonstrates a wholesale disregard for consumer privacy rights and violated numerous state and federal laws.

4.      As such, Plaintiff brings suit individually and on behalf of all others similarly situated and seeks (i) an injunction prohibiting Defendant from monitoring, collecting, and transmitting consumers' usage information, (ii) actual and statutory damages arising from the invasion of their personal privacy, and (iii) actual damages arising from the purchase of their We-Vibe, including the return of the purchase price of the product and disgorgement of profits.

## PARTIES

5.      Plaintiff N.P. is a natural person and citizen of the State of Illinois.

6.      Defendant Standard Innovation (US), Corp., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 330-1130 Morrison Drive, Ottawa, Ontario, Canada, K2H 9N6, and does business throughout the United States and the State of Illinois, including in this District.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claim under the Wiretap Act, 18, U.S.C. §§ 2510, *et seq.*, a federal statute, and supplemental jurisdiction over Plaintiff's state law claims because they are so related to Plaintiff's federal claim that they form part of the same case or controversy under Article III of the United States Constitution. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than the

Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs,

and (iii) none of the exceptions under that subsection apply to this action.

8.      This Court has personal jurisdiction over Defendant because it conducts business

in Illinois and the events giving rise to this lawsuit occurred, in substantial part, in Illinois.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial

part of the events giving rise to Plaintiff's claims occurred, in substantial part, in this District and

Plaintiff resides in this District.

<strong>COMMON FACTUAL ALLEGATIONS</strong>

*A Brief Overview of the We-Vibe and We-Connect*

10.      In September 2014, Defendant introduced a new feature to its We-Vibe product

line that enabled customers to remotely control their vibrators from a smartphone.

11.      To take advantage of this new feature, users must download Defendant's

proprietary We-Connect app from the Apple Store or the Google Play store. *See* <u>Figure 1</u>, below.



(<u>**Figure 1**</u>)

12.     Once downloaded, We-Connect allows users to "pair" (i.e., connect) their We-Vibes to their smartphones using a Bluetooth connection. Through the We-Connect app, Defendant allows users to access and control the We-Vibe's full array of features and settings, including the various vibration modes. *See* Figure 2.



(**Figure 2**, displaying vibration modes available in the We-Connect app)

13.     Defendant also programmed We-Connect to allow for partners to communicate with each other. With the "connect lover" feature, partners can exchange text messages, engage in video chats, and can control a paired We-Vibe device.

14.     When partners initiate a "connect lover" session, Defendant programmed We-Connect to show the following promise of security:



(**Figure 3**)

15.     To increase awareness of the We-Connect app and to increase sales, Defendant advertised its We-Connect app functionality on its website and on the product packaging for the We-Vibe product line. For instance, the packaging for the We-Vibe Rave vibrator states that the vibrator is "APP READY" and states that the app is available for download at "we-vibe.com/app" and on the Google Play store and Apple Store.

16.     Defendant's website likewise boasts of We-Vibe's app functionality, inviting consumers to "Get more with the app," and explaining that the app provides access to additional features and functionality. *See*, *e.g.*, *Rave by We-Vibe*, We-Vibe, http://www.we-vibe.com/rave (last accessed Sept. 1, 2016).

17.     Thus, Defendant made its We-Connect app functionality a key selling point of its We-Vibe product line. App compatibility also allows Defendant to charge a higher price for its vibrators relative to less equipped versions.

***Defendant Designed We-Connect to Secretly Collect Customers' Intimate Usage Data***

18.     By design, the defining feature of the We-Vibe device is the ability to remotely control it through We-Connect. Defendant requires customers to use We-Connect to fully access the We-Vibe's features and functions. Yet, Defendant fails to notify or warn customers that We-Connect monitors and records, in real time, how they use the device. Nor does Defendant disclose that it transmits the collected private usage information to its servers in Canada.

19.     Indeed, Defendant programmed We-Connect to secretly collect intimate details about its customers' use of the We-Vibe, including the date and time of each use, the vibration intensity level selected by the user, the vibration mode or pattern selected by the user (collectively, the "Usage Information"), and incredibly, the email address of We-Vibe customers who had registered with the App, allowing Defendant to link the usage information to specific customer accounts.

20.     To collect its customers' Usage Information, Defendant designed and programmed We-Connect to continuously and contemporaneously intercept and monitor the contents of electronic communications that customers send to their We-Vibe devices from their smartphones, such as operational instructions regarding the users' desired vibration intensity level and desired vibration "mode" or pattern. In other words, whenever users interact with their We-Vibe through We-Connect, Defendant intercepts the content of those interactions sent to the We-Vibe devices.

21.     Defendant also designed and programmed We-Connect to transmit the contents of the Usage Information to its servers in Canada.

22.     In addition, Defendant designed We-Connect to surreptitiously route information from the "connect lover" feature to its servers. For instance, when partners use the "connect

6

lover" feature and one takes remote control of the We-Vibe device or sends a communication, We-Connect causes all of the information to be routed to its servers, and then collects, at a minimum, certain information about the We-Vibe, including its temperature and battery life. That is, despite promising to create "a secure connection between your smartphones," Defendant causes *all* communications to be routed through its servers.

23.     Defendant never obtained consent from any of its customers before intercepting, monitoring, collecting, and transmitting their Usage Information. To the contrary, Defendant concealed its actual data collection policies from its customers knowing (i) that a personal vibrator that monitors, collects, and transmits highly sensitive and intimate usage data back to the manufacturer is worth significantly less than a personal vibrator that does not, and (ii) most, if not all, of its customers would not have purchased a We-Vibe in the first place had they known that it would monitor, collect, and transmit their Usage Information.

## FACTS SPECIFIC TO PLAINTIFF

24.     On or around May 2016, Plaintiff N.P. purchased a We-Vibe Rave vibrator from a local retailer for $130 for her own personal use.

25.     The We-Vibe Rave vibrator's product packaging—like the product packaging of all Bluetooth enabled vibrators in the We-Vibe line—touted its app-compatibility and Bluetooth functionality, and as a result of those features, the We-Vibe vibrators cost substantially more than comparable vibrators lacking such features.

26.     Soon after purchase, Plaintiff downloaded We-Connect onto her smartphone and paired it with her We-Vibe. Plaintiff downloaded We-Connect in order to access the We-Vibe's full array of features and to control her We-Vibe wirelessly from her smartphone.

27.     Since her purchase of the We-Vibe in May 2016, Plaintiff has used We-Connect

on several occasions.

28.     Unbeknownst to Plaintiff, Defendant programmed We-Connect to secretly intercept, monitor, collect, and transmit her Usage Information.

29.     Accordingly, each and every time Plaintiff used We-Connect to control her We-Vibe, Defendant intercepted and collected her personally identifiable We-Vibe Usage Information, and transmitted it to its servers in Canada.

30.     Defendant never informed Plaintiff that it would monitor, collect, and transmit her Usage Information.

31.     Likewise, Plaintiff never provided her consent to Defendant to monitor, collect, and transmit her Usage Information.

32.     Plaintiff would never have purchased a We-Vibe had she known that in order to use its full functionality, Defendant would monitor, collect, and transmit her Usage Information through We-Connect.

## CLASS ALLEGATIONS

33.     **Class Definitions:** Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of herself and a class and subclass of similarly situated individuals defined as follows:

> **Purchaser Class**: All individuals in the United States who purchased a Bluetooth enabled We-Vibe.
>
> **Illinois Purchaser Subclass**:  All members of the Purchaser Class who are domiciled in the State of Illinois.
>
> **Surveillance Class**:  All individuals in the United States who downloaded the We-Connect app and used it to control a We-Vibe.
>
> **Illinois Surveillance Subclass**:  All members of the Surveillance Class who are domiciled in the State of Illinois.

The following people are excluded from the Classes and Subclasses (the "Classes" unless otherwise noted): (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

34.     The exact number of members of the Classes is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Classes likely consist of tens of thousands of individuals. Members of the Classes can be easily identified through Defendant's records and/or Defendant's retail partners' records.

35.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include but are not limited to the following:

a)      Whether Defendant's conduct constitutes a violation of the Wiretap Act;

b)      Whether Defendant's conduct constitutes a violation of the Illinois Eavesdropping Act;

c)      Whether Defendant's conduct constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practice Act;

d)      Whether Defendant's conduct constitutes an intrusion upon seclusion; and

e)      Whether Defendant was unjustly enriched through its conduct.

36.     Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Classes, and she has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and members of the Class sustained damages as a result of Defendant's uniform wrongful conduct toward Plaintiff and the Classes. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Classes.

37.     This class action is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and will have no effective remedy. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

38.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definitions" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violation of the Federal Wiretap Act**
**18 U.S.C. §§ 2510, *et seq.***
**(On Behalf of Plaintiff and the Surveillance Class)**

39.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

40.     The Wiretap Act generally prohibits the intentional "interception" of "wire, oral, or electronic communications." 18 U.S.C. § 2511(1).

41.     By designing and programming We-Connect to contemporaneously monitor, intercept, and transmit the contents of electronic communications that Plaintiff and the Surveillance Class members sent to their We-Vibe devices from their smartphones, including those containing operational instructions regarding their desired vibration intensity level and desired vibration mode or pattern as alleged herein, Defendant intentionally intercepted and/or endeavored to intercept the contents of "electronic communications," in violation of 18 U.S.C. § 2511(1).

42.     Further, by automatically and contemporaneously transmitting Plaintiff and the Surveillance Class's Usage Information to its servers in Canada, Defendant intentionally used, or endeavored to use, the contents of such electronic communications while knowing or having reason to know that the data was obtained through the interception of an electronic communication.

43.     No party to the electronic communications alleged herein consented to Defendant's interception or use of the contents of the electronic communications. Nor could they—Defendant never sought to obtain Plaintiff's and the Surveillance Class's consent, and each interception occurred concurrently while they used We-Connect to control their We-Vibe devices. Moreover, Defendant was never a party to any of the communications sent and/or

11

received by Plaintiff and members of the Surveillance Class.

44.     Plaintiff and the Surveillance Class suffered harm as a result of Defendant's

violations of the Wiretap Act, and therefore seek (a) preliminary, equitable and declaratory relief

as may be appropriate, (b) the sum of the actual damages suffered and the profits obtained by

Defendant as a result of its unlawful conduct, or statutory damages as authorized by 18 U.S.C.

§ 2520(2)(B), whichever is greater, (c) punitive damages, and (d) reasonable costs and attorneys'

fees.

**SECOND CAUSE OF ACTION**
**Violation of the Illinois Eavesdropping Statute**
**720 ILCS 5/14-1 *et seq.***
**(On behalf of Plaintiff and the Illinois Surveillance Subclass)**

45.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth

herein.

46.     A person violates the Illinois Eavesdropping Statute when he or she "knowingly

and intentionally . . . [i]ntercepts, records, or transcribes, in a surreptitious manner, any private

electronic communication to which he or she is not a party unless he or she does so with the

consent of all parties to the private electronic communication. . . ." 720 ILCS 5/14-2.

47.     The statute broadly defines "private electronic communication" to mean "any

transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted

in whole or part by a wire, radio, pager, computer, electromagnetic, photo electronic or photo

optical system, when the sending or receiving party intends the electronic communication to be

private under circumstances reasonably justifying that expectation." 720 ILCS 5/14-1(e).

48.     By designing and programming We-Connect to contemporaneously monitor,

intercept, record, and transmit the contents of electronic communications that Plaintiff and the

Illinois Surveillance Subclass members sent to their We-Vibe devices from their smartphones,

12

including those containing operational instructions regarding their desired vibration intensity level and desired vibration "mode" or pattern as alleged herein, Defendant intentionally and knowingly intercepted and recorded a "private electronic communication," in violation of 720 ILCS 5/14-2.

49.     Plaintiff and the Illinois Surveillance Subclass members intended that their Usage Information would be private. Indeed, their Usage Information reveals highly sensitive and intimate details about their private use of a personal vibrator that Plaintiff and the Illinois Surveillance Subclass expected to remain private and confidential. Beyond that, Defendant never notified Plaintiff and the Illinois Surveillance Subclass that it was monitoring and intercepting their Usage Information. Thus, there was no reason for them to believe that anybody could even potentially access or intercept their private electronic communications in the first place.

50.     Neither Plaintiff nor the members of the Illinois Surveillance Subclass consented to Defendant's interception or use of their private electronic communications.

51.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Illinois Surveillance Subclass have been injured and seek: (1) an injunction prohibiting further eavesdropping by Defendant, (2) actual damages, including the amount paid for the We-Vibe devices, and (3) punitive damages in an amount to be determined by the court or by a jury pursuant to 720 ILCS 5/14-6(c).

**THIRD CAUSE OF ACTION**
**Intrusion upon Seclusion**
**(On behalf of Plaintiff and the Illinois Surveillance Subclass)**

52.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

53.     As explained herein, Defendant has intruded upon the seclusion of Plaintiff and

each member of the Illinois Surveillance Subclass by secretly monitoring, collecting, and transmitting their Usage Information, which revealed specific details regarding their sexual behavior.

54.     By designing and programming We-Connect to secretly monitor, intercept, and transmit its customers' Usage Information, Defendant intentionally and knowingly intruded upon the seclusion of Plaintiff's and Illinois Surveillance Subclass members' private affairs.

55.     Further, Defendant's monitoring, collection, and transmission of Plaintiff's and Illinois Surveillance Subclass members' Usage Information—without their knowledge or consent—is highly offensive to a reasonable person as it reveals intimate private details about their sexual behavior that they believed were confidential.

56.     Defendant's intrusion upon Plaintiff's and the Illinois Surveillance Subclass members' sexual privacy caused Plaintiff mental anguish and suffering in the form of embarrassment, anxiety, and concern regarding the safety of her Usage Information.

57.     Plaintiff, on her own behalf and on behalf of the Illinois Surveillance Subclass, seeks an injunction that (1) prohibits Defendant from monitoring and transmitting Usage Information without informed written consent, and requires Defendant to destroy any and all such information currently in its possession, (2) actual damages, including the amount paid for the We-Vibe devices, and (3) punitive damages, as well as for costs and reasonable attorneys' fees incurred.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Purchaser Class)**

58.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

59.     Plaintiff and members of the Purchaser Class conferred a monetary benefit on

14

Defendant when they purchased We-Vibe devices.

60.    Defendant appreciates or has knowledge of such benefit.

61.    Given that Defendant monitored, collected, and transmitted the Plaintiff's and the Purchaser Class's We-Vibe Usage Information without their knowledge or consent—and because Plaintiff and the Purchaser Class would never have purchased the product had they known that such information would be accessible—Defendant has unjustly received and retained a benefit as a result of its conduct.

62.    Principles of equity and good conscience require Defendant to return the purchase price of the We-Vibe to the Plaintiff and the Purchaser Class.

63.    Accordingly, Plaintiff and the Purchaser Class seek disgorgement and restitution of any money received by Defendant as a result of the conduct alleged herein.

## FIFTH CAUSE OF ACTION
### Violation of the Illinois Consumer Fraud and Deceptive Business Practice Act
### 815 ILCS 505/1 *et seq.*
### (On behalf of Plaintiff and the Illinois Purchaser Subclass)

64.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

65.    The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA") protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

66.    The ICFA prohibits any unlawful, unfair, or fraudulent business acts or practices including the employment of any deception, fraud, false pretense, false promise, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact.

67.    The ICFA applies to Defendant's conduct as described herein because it protects consumers in transactions that are intended to result, or which have resulted, in the sale of goods

or services.

68.     Defendant is a "person" as defined under section 505/1(c) of the ICFA because it is a foreign corporation.

69.     Plaintiff and each member of the Illinois Purchaser Subclass is a "consumer" as defined by section 505/1(e) of the ICFA because she purchased merchandise, in the form of the We-Vibe, for use in her household.

70.     Defendant's We-Vibe devices are "merchandise" within the meaning of section 505/1(b) and the sale of its product is considered "trade" or "commerce" under the ICFA.

71.     Defendant violated the ICFA by omitting and concealing material facts about the We-Vibe devices. Specifically, Defendant omitted and concealed that We-Connect secretly monitors, collects, and transmits its users' highly intimate and sensitive Usage Information back to Defendant's servers in Canada.

72.     Defendant's data interception and collection practices are material to the transactions here. Defendant emphasized the app-compatibility and functionality of its We-Vibe vibrators, offered additional We-Vibe features and functionality only available through use of We-Connect, and charged a higher price for its vibrators relative to comparable, non-Bluetooth vibrators. Had Plaintiff and the Illinois Purchaser Subclass known the true characteristics and behavior of the device (that it collects and transmits intimate usage data back to Defendant), they would not have purchased the We-Vibe devices or would have paid substantially less for them.

73.     Defendant intentionally concealed its practices regarding the interception and collection of Usage Information from Plaintiff and the Illinois Purchaser Subclass because it knew that reasonable consumers would not have purchased their We-Vibe devices had they known that the We-Connect app would allow Defendant to collect and transmit their highly

16

private and intimate usage data back to the manufacturer.

74.     Defendant's concealment, suppression, and omission of material facts was likely to mislead reasonable consumers under the circumstances, and thus constitutes an unfair and deceptive trade practice in violation of the ICFA.

75.     Thus, by failing to disclose and inform Plaintiff and the Illinois Purchaser Subclass about its data collection practices, Defendant violated section 505/2 of the ICFA.

76.     As a direct and proximate result of these unfair and deceptive practices, Plaintiff and each Illinois Purchaser Subclass member has suffered actual harm in the form of money paid for a device that they would not have purchased had they known it would monitor, collect, and transmit usage information to the manufacturer.

77.     As such, Plaintiff and the Illinois Purchaser Subclass, sees an order (1) requiring Defendant to cease the unfair practices described herein, (2) awarding actual damages, including the amount paid for the We-Vibe devices, and (3) reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff N.P., on behalf of herself and the Classes, respectfully requests that the Court enter an Order:

A.     Certifying this case as a class action on behalf of the Classes defined above, appointing N.P. as representative of the Classes, and appointing her counsel as class counsel;

B.     Declaring that Defendant's actions, as set out above, violate the Wiretap Act, the Illinois Eavesdropping Statute, and the Illinois Consumer Fraud and Deceptive Business Practices Act, and that they constitute Intrusion Upon Seclusion and Unjust Enrichment;

C.     Awarding injunctive relief that (i) prohibits Defendant from intercepting, monitoring, and transmitting its customers' We-Vibe usage information without their informed

17

consent, and (ii) requires Defendant to destroy any and all such information currently in its possession;

        D.      Awarding damages, including actual, statutory, and punitive damages, to Plaintiff and the Classes in an amount to be determined at trial;

        E.      Awarding Plaintiff and the Classes their reasonable attorneys' fees and litigation expenses;

        F.      Awarding Plaintiff and the Classes pre- and post-judgment interest, to the extent allowable;

        G.      Awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Classes; and

        H.      Awarding such other and further relief as the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated:  September 2, 2016          **N.P.**, individually and on behalf of all others similarly situated,

By: /s/ Benjamin H. Richman
      One of Plaintiff's Attorneys

Benjamin H. Richman
brichman@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378