**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| N.P. and P.S., individually and on behalf of all others similarly situated, | Case No. 1:16-cv-8655 |
| *Plaintiffs,* | |
| *v.* | Honorable Virginia M. Kendall |
| STANDARD INNOVATION CORP., d/b/a WE-VIBE, a Canadian corporation, | |
| *Defendant.* | |

## AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs N.P. and P.S. (collectively "Plaintiffs") bring this Amended Class Action Complaint and Demand for Jury Trial against Defendant Standard Innovation Corp. ("Standard Innovation" or "Defendant") for selling products that secretly collect and transmit highly sensitive personally identifiable information about the consumers using them. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### NATURE OF THE ACTION

1.      Defendant Standard Innovation is a "sensual lifestyle products" company that sells a high-end vibrator called the We-Vibe. To fully operate the We-Vibe, users download Defendant's "We-Connect" application from the Apple Store or the Google Play store and install it on their smartphones. With We-Connect, users can "pair" their smartphone to the We-Vibe, allowing them—and their partners—remote control over the vibrator's settings and features.

2.      Unbeknownst to its customers, however, Defendant designed We-Connect to (i) collect and record highly intimate and sensitive data regarding consumers' personal We-Vibe

use, including the date and time of each use and the selected vibration settings, and (ii) transmit such usage data—along with the user's personal email address—to its servers in Canada.

3.     Though the data collected from its customers' smartphones is undoubtedly valuable to the company, Defendant's conduct demonstrates a wholesale disregard for consumer privacy rights and violated state and federal laws.

4.     As such, Plaintiffs bring suit individually and on behalf of all others similarly situated and seek (i) an injunction prohibiting Defendant from monitoring, collecting, and transmitting consumers' Usage Information, (ii) actual and statutory damages arising from the invasion of their personal privacy, and (iii) actual damages arising from the purchase of their We-Vibe devices, including the return of the purchase price and disgorgement of profits.

## PARTIES

5.     Plaintiff N.P. is a natural person and citizen of the State of Illinois.

6.     Plaintiff P.S. is a natural person and citizen of the State of Missouri.

7.     Defendant Standard Innovation Corp., is a corporation organized and existing under the laws of Canada with its principal place of business located at 330-1130 Morrison Drive, Ottawa, Ontario, Canada, K2H 9N6. Defendant does business throughout the United States and the State of Illinois, including in this District.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over Plaintiff N.P.'s claim under the Wiretap Act, 18, U.S.C. §§ 2510, a federal statute, and supplemental jurisdiction over Plaintiff P.S.'s common law claim because it is so related to the federal claim that form part of the same case or controversy under Article III of the United States Constitution. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332(d)(2), because (i) at least one member of the Classes is a citizen of a different state than the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

9.      This Court has personal jurisdiction over Defendant because it conducts business in the State of Illinois and the events giving rise to this lawsuit occurred in the State of Illinois.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District and N.P. resides here.

**COMMON FACTUAL ALLEGATIONS**

*A Brief Overview of the We-Vibe and We-Connect*

11.     In September 2014, Defendant introduced a new feature to its We-Vibe product line that enabled customers to remotely control their vibrators from a smartphone.

12.     To take advantage of this new feature, users must download Defendant's proprietary We-Connect app from the Apple Store or the Google Play store. *See* <u>Figure 1</u>, below.



(**Figure 1.**)

13.     Once downloaded, We-Connect allows users to "pair" (i.e., connect) their We-

3

Vibes to their smartphones using a Bluetooth connection. Through the We-Connect app,

Defendant allows users to access and control the We-Vibe's full array of features and settings,

including the various vibration modes. *See* Figure 2.



(**Figure 2**, displaying vibration modes available in the We-Connect app.)

14.     Defendant also programmed We-Connect to allow for partners to communicate

with each other. With the "connect lover" feature, partners can exchange text messages, engage

in video chats, and can control a paired We-Vibe device.

15.     When partners initiate a "connect lover" session, Defendant programmed We-

Connect to show the following promise of security (*see* Figure 3):



(**Figure 3**.)

16.     To increase awareness of the We-Connect app and to increase sales, Defendant

advertised its We-Connect app functionality on its website and on the product packaging for the

We-Vibe product line. For instance, the packaging for the We-Vibe Rave vibrator states that the

vibrator is "APP READY" and states that the app is available for download at "we-

vibe.com/app" and on the Google Play store and Apple Store.

17.     Defendant's website likewise boasts of We-Vibe's app functionality, inviting

consumers to "Get more with the app," and explaining that the app provides access to additional

features and functionality. *See*, *e.g.*, *Rave by We-Vibe*, We-Vibe, http://www.we-vibe.com/rave

(last accessed Dec. 22, 2016).

18.     Thus, Defendant made its We-Connect app functionality a key selling point of its

We-Vibe product line. App compatibility also allows Defendant to charge a higher price for its

5

vibrators, relative to less equipped versions.

***Defendant Designed We-Connect to Secretly Collect Customers' Intimate Usage Data***

19.     By design, the defining feature of the We-Vibe device is the ability to remotely control it through We-Connect. Defendant requires customers to use We-Connect to fully access the We-Vibe's features and functions. Yet, Defendant fails to notify or warn customers that We-Connect monitors and records, in real time, how they use the device. Nor does Defendant disclose that it transmits the collected private usage information to its servers in Canada.

20.     Indeed, Defendant programmed We-Connect to secretly collect intimate details about its customers' use of the We-Vibe, including the date and time of each use, the vibration intensity level selected by the user, the vibration mode or pattern selected by the user (collectively, the "Usage Information"), and incredibly, the email address of We-Vibe customers who had registered with the App, allowing Defendant to link the usage information to specific customer accounts.

21.     To collect its customers' Usage Information, Defendant designed and programmed We-Connect to continuously and contemporaneously intercept and monitor the contents of electronic communications that customers send to their We-Vibe devices from their smartphones, such as operational instructions regarding the users' desired vibration intensity level and desired vibration "mode" or pattern. In other words, whenever users interact with their We-Vibe through We-Connect, Defendant intercepts the content of those interactions sent to the We-Vibe devices.

22.     Defendant also designed and programmed We-Connect to transmit the contents of the Usage Information to its servers in Canada.

23.     In addition, Defendant designed We-Connect to surreptitiously route information

6

from the "connect lover" feature to its servers. For instance, when partners use the "connect lover" feature and one takes remote control of the We-Vibe device or sends a communication, We-Connect causes all of the information to be routed to its servers, and then collects, at a minimum, certain information about the We-Vibe, including its temperature and battery life. That is, despite promising to create "a secure connection between your smartphones," Defendant causes *all* communications to be routed through its servers.

24. Defendant never obtained consent from any of its customers before intercepting, monitoring, collecting, and transmitting their Usage Information. To the contrary, Defendant concealed its actual data collection policies from its customers knowing (i) that a personal vibrator that monitors, collects, and transmits highly sensitive and intimate usage data back to the manufacturer is worth significantly less than a personal vibrator that does not, and (ii) most, if not all, of its customers would not have purchased a We-Vibe in the first place had they known that it would monitor, collect, and transmit their Usage Information.

## FACTS SPECIFIC TO PLAINTIFF N.P.

25. On or around May 2016, Plaintiff N.P. purchased a We-Vibe Rave vibrator from a local retailer for $130 for her own personal use.

26. The We-Vibe Rave vibrator's product packaging—like the product packaging of all Bluetooth enabled vibrators in the We-Vibe line—touted its app-compatibility and Bluetooth functionality (via We-Connect).

27. Soon after the purchase, Plaintiff N.P. downloaded We-Connect onto her smartphone and paired it with her We-Vibe. She did so in order to access the We-Vibe's full array of features and to control her We-Vibe wirelessly from her smartphone.

28. Since her purchase of the We-Vibe in May 2016, Plaintiff N.P. has used We-

Connect on several occasions.

29. Unbeknownst to Plaintiff N.P., Defendant programmed We-Connect to secretly intercept, monitor, collect, and transmit her Usage Information.

30. Accordingly, each and every time Plaintiff N.P. used We-Connect to control her We-Vibe, Defendant intercepted and collected her personally identifiable We-Vibe Usage Information, and transmitted it to its servers in Canada.

31. Defendant never informed Plaintiff N.P. that it would monitor, collect, and transmit her Usage Information.

32. Likewise, Plaintiff N.P. never provided her consent to Defendant to monitor, collect, and transmit her Usage Information.

33. Plaintiff N.P. would never have purchased a We-Vibe had she known that in order to utilize its full functionality, Defendant would monitor, collect, and transmit her Usage Information through We-Connect.

## FACTS SPECIFIC TO PLAINTIFF P.S.

34. On or around January 25, 2015, Plaintiff P.S. purchased a We-Vibe 4 Plus vibrator from a local retailer for $193.

35. The We-Vibe 4 Plus vibrator's product packaging—like the product packaging of all Bluetooth enabled vibrators in the We-Vibe line—touted its app-compatibility and Bluetooth functionality (via We-Connect). As a result of those features, the purchase price for the We-Vibe 4 Plus vibrators (like all Bluetooth enabled vibrators in the We-Vibe line) is substantially higher than other comparable vibrators without them.

36. Unbeknownst to Plaintiff P.S. at the time of his purchase, Defendant programmed We-Connect to secretly monitor, collect, and transmit its users' Usage Information to We-Vibe's

servers.

37.     Plaintiff would never have purchased the We-Vibe had he known that Defendant

would monitor, collect, and transmit Usage Information about users through the We-Connect app

(which users were required to use in order to access the product's full functionality).

## CLASS ALLEGATIONS

38.     **Class Definitions:** Plaintiffs N.P. and P.S. bring this action pursuant to Federal

Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of themselves and two Classes of similarly

situated individuals defined as follows:

> **Purchaser Class**: All individuals in the United States who purchased a Bluetooth-enabled We-Vibe brand product before September 26, 2016.

> **App Class**: All individuals in the United States who downloaded the We-Connect application and used it to control a We-Vibe Brand Product before September 26, 2016.

The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over

this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents,

successors, predecessors, and any entity in which the Defendant or its parents have a controlling

interest and their current or former employees, officers and directors; (3) persons who properly

execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this

matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel

and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such

excluded persons.

39.     **Numerosity**: The exact number of members of the Classes is unknown, but

individual joinder in this case is impracticable. The Classes likely consist of tens of thousands of

individuals. Members of the Classes can be easily identified through Defendant's records and/or

Defendant's retail partners' records.

40.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include but are not limited to the following:

    (a) Whether Defendant's conduct constitutes a violation of the Wiretap Act;

    (b) Whether Defendant's conduct constitutes an intrusion upon seclusion; and

    (c) Whether Defendant was unjustly enriched through its conduct.

41.     **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the Classes in that Plaintiffs and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct.

42.     **Adequate Representation**: Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Classes, and they have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Classes.

43.     **Superiority**: This class action is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable. The damages suffered by the individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes

could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violation of the Federal Wiretap Act**
**18 U.S.C. §§ 2510, *et seq*.**
**(On Behalf of Plaintiff N.P. and the App Class)**

44.    Plaintiff N.P. incorporates by reference the foregoing allegations as if fully set forth herein.

45.    The Wiretap Act generally prohibits the intentional "interception" of "wire, oral, or electronic communications." 18 U.S.C. § 2511(1).

46.    By designing and programming We-Connect to contemporaneously monitor, intercept, and transmit the contents of electronic communications that Plaintiff N.P. and the App Class members sent to their We-Vibe devices from their smartphones, including those containing operational instructions regarding their desired vibration intensity level and desired vibration mode or pattern as alleged herein, Defendant intentionally intercepted and/or endeavored to intercept the contents of "electronic communications," in violation of 18 U.S.C. § 2511(1).

47.    Further, by automatically and contemporaneously transmitting Plaintiff N.P.'s and the App Class's Usage Information to its servers in Canada, Defendant intentionally used, or endeavored to use, the contents of such electronic communications while knowing or having reason to know that the data was obtained through the interception of an electronic communication.

11

48.     No party to the electronic communications alleged herein consented to Defendant's interception or use of the contents of the electronic communications. Nor could they—Defendant never sought to obtain Plaintiff N.P.'s and the App Class's consent, and each interception occurred concurrently while they used We-Connect to control their We-Vibe devices. Moreover, Defendant was never a party to any of the communications sent and/or received by Plaintiff N.P. and members of the App Class.

49.     Plaintiff N.P. and the App Class suffered harm as a result of Defendant's violations of the Wiretap Act, and therefore seek (a) preliminary, equitable, and declaratory relief as may be appropriate, (b) the sum of the actual damages suffered and the profits obtained by Defendant as a result of its unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(2)(B), whichever is greater, (c) punitive damages, and (d) costs and attorneys' fees.

**SECOND CAUSE OF ACTION**
**Intrusion upon Seclusion**
**(On behalf of Plaintiff N.P. and the App Class)**

50.     Plaintiff N.P. incorporates by reference the foregoing allegations as if fully set forth herein.

51.     As explained above, Defendant has intruded upon the seclusion of Plaintiff N.P. and each member of the App Class by secretly monitoring, collecting, and transmitting their Usage Information, which revealed specific details regarding their sexual behavior.

52.     By designing and programming We-Connect to secretly monitor, intercept, and transmit its customers' Usage Information, Defendant intentionally and knowingly intruded upon the seclusion of Plaintiff N.P.'s and App Class members' private affairs.

53.     Further, Defendant's monitoring, collection, and transmission of Plaintiff N.P.'s and the App Class members' Usage Information—without their knowledge or consent—is highly

12

offensive to a reasonable person as it reveals intimate private details about their sexual behavior that they believed were confidential.

54.     Defendant's intrusion upon Plaintiff N.P.'s and the App Class members' sexual privacy caused them mental anguish and suffering in the form of embarrassment, anxiety, and concern regarding the safety of their Usage Information.

55.      Plaintiff N.P. and the App Class seek (1) an injunction that prohibits Defendant from monitoring and transmitting Usage Information without informed consent, and requires Defendant to destroy any and all such information currently in its possession, (2) actual damages, including the amount paid for the We-Vibe devices, and (3) punitive damages, as well as for costs and reasonable attorneys' fees incurred.

### THIRD CAUSE OF ACTION
**Unjust Enrichment**
**(On behalf of Plaintiff P.S. and the Purchaser Class)**

56.     Plaintiff P.S. incorporates by reference the foregoing allegations as if fully set forth herein.

57.     Plaintiff P.S. and members of the Purchaser Class conferred a monetary benefit on Defendant when they purchased We-Vibe products.

58.     Defendant appreciates or has knowledge of such benefit.

59.     Plaintiff P.S. and the Purchaser Class would never have purchased the We-Vibe products (and would never have conferred any monetary benefit on Defendant) had they known that Defendant secretly programmed its We-Connect app to monitor, collect, and transmit Usage Information about its users without their knowledge or consent.

60.     Defendant has unjustly received and retained a benefit as a result of its conduct.

61.     Principles of equity and good conscience require Defendant to return the money

13

that Plaintiff P.S. and the Purchaser Class paid for the We-Vibe products.

62.      Accordingly, Plaintiff P.S. and the Purchaser Class seek the return of the money they paid for the We-Vibe products, including the disgorgement and restitution of any money received by Defendant as a result of the conduct alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs N.P. and P.S., on behalf of themselves and the Classes, respectfully requests that the Court enter an Order:

A.      Certifying this case as a class action on behalf of the Classes defined above, appointing N.P. as representative of the App Class, and P.S. as representative of the Purchaser Class, and appointing their counsel as class counsel;

B.      Declaring that Defendant's actions, as set out above, violate the Wiretap Act and that they constitute Intrusion Upon Seclusion and Unjust Enrichment;

C.      Awarding injunctive relief that (i) prohibits Defendant from intercepting, monitoring, and transmitting its customers' We-Vibe usage information without their informed consent, and (ii) requires Defendant to destroy any and all such information currently in its possession;

D.      Awarding damages, including actual, statutory, and punitive damages, to Plaintiffs and the Classes in an amount to be determined at trial;

E.      Awarding Plaintiffs and the Classes their reasonable attorneys' fees and litigation expenses;

F.      Awarding Plaintiffs and the Classes pre- and post-judgment interest, to the extent allowable;

G.      Awarding such other injunctive and declaratory relief as is necessary to protect

14

the interests of Plaintiffs and the Classes; and

      H.    Awarding such other and further relief as the Court deems reasonable and just.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Respectfully submitted,

Dated: February 27, 2017

**N.P.** AND **P.S.**, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

By: /s/ Eve-Lynn J. Rapp
One of Plaintiffs' Attorneys

Benjamin H. Richman
brichman@edelson.com
Benjamin Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Eve-Lynn J. Rapp
erapp@edelson.com
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.234.5262
Fax: 415.373.9435

*Counsel for Plaintiffs and the Putative Classes*

15

<u>**CERTIFICATE OF SERVICE**</u>

I, Eve-Lynn J. Rapp, an attorney, hereby certify that on February 27, 2017, I served the above and foregoing ***First Amended Class Action Complaint and Demand for Jury Trial*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Eve-Lynn J. Rapp